# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRCT OF VIRGINIA

MAHMOUD MANSOUR AHMED ELGENDY A# 249-393-254

Petitioner,

V.

PAMELA JO. BONDI, ATTORNEY GENERAL, KRISTI NOEM, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY; TODDY LYONS, ACTING U.S. DIRECTOR FOR IMMIGRATION CUSTOMS ENFORCEMENT, JOSEPH SIMON, FIELD OFFICE DIRECTOR OF WASHINGTON ICE FIELD OFFICE; AND PAUL PERRY SUPERINTENDENT OF CAROLINE IMMIGRATION DETENTION FACILITY,

Respondents.

Civil Action No._____

PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C §2241, BY A PERSON SUBJECT TO INDEFINITE IMMIGRATION DETENTION.

## BACKGROUND

Petitioner, Mahmoud Elgendy, hereby petitions this Court for a writ of habeas corpus to remedy Petitioner's unlawful detention by Respondents, and to enjoy Petitioner's continued unlawful detention by Respondent. In support of this petition and complain for injunctive relief, Petitioner alleges as follows:

## CUSTODY

1. Petitioner is in the physical custody of Respondents and U.S. Immigration and Customs Enforcement ("ICE"). Petitioner is detained at the Caroline Immigration Detention Facility in Bowling Green, Virginia. ICE has contracted Caroline Immigration Detention Facility to house detainees such as petitioner. Petitioner is under the direct control of Respondents and their agents.

1

## JURISDICTION

2.  This action arises under the Constitution of the United States, 28 U.S.C. §2241(c) (1), and the Immigration Nationality Act ("INA"), 8 U.S.C. §1101 et seq. This Court has subject matter jurisdiction under 28 U.S.C. §2241, Art. I §9, cl.2 of the United States Constitution ("Suspension Clause"); and 28 U.S.C §1331, as Petitioner is presently in custody under the color of the authority of the United States., and such custody is in violation of the Constitution, laws, treaties of the United States. See Zadvydas v. Davis, 553 U.S. 678, 688 (2001) ("we conclude that §2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period-detention."); INS v. St. Cyr, 533 U.S. 289, 301 (2001) ("at its historical core, the writ of habeas corpus has served as a means of reviewing the legality of executive detention, and it is in that context that its protection have been strongest.") Clark v. Martinez, 543 U.S. 371 (2005) (holding that Zadvydas applies to aliens found inadmissible as well removable).

## VENUE

3.  Venue lies in the Eastern District Court of Virginia, because petitioner is currently detained in the territorial jurisdiction of this Court, and the Caroline Immigration Detention Facility. 28 U.S.C. §1391.

## EXHAUSTION OF REMEDIES

4.  Petitioner has exhaust his administrative remedies to the extent required by law, and his only remedy is by way of this judicial action. After the Supreme Court in Zadvydas, the Department of Justice issued regulations governing the custody of aliens removed. See 8 C.F.R. §241.4. Petitioner received a final order of removal on April 4th 2025. At his "90-day" custody review, on or about July 3rd 2025, ICE decided to continue his detention. Subsequently, Petitioner submit a letter to ICE's Headquarters Post-Order-Detention Unit ("HQDPU") to consider on his "180-day" custody review

2

by his then Attorney (See Exhibit E), but in a decision dated October 8th 2025, "HQPDU" informed Petitioner that it would continue to keep him in custody despite having been detained for six month after a final order of removal. The custody regulations do not provide for appeal from a HQPDU custody review decision. See 8 C.F.R §241.4(d).

5. No statutory exhaustion requirements apply to Petitioner's claim of unlawful detention. Petitioner still remains detained without indication from the government of the United States or Egypt that Petitioner's repatriation is reasonably foreseeable. Therefore, habeas petition is proper in the light of these facts.

## PARTIES

6. Petitioner is a native of the Egypt. Petitioner was first taken into ICE custody on September 16th 2024, and has remained in custody continuously since that date. Petitioner was order removed on September 17th 2024, at the border by CBP Agent Christopher L Monsegue, and Acting/Patrol Agent in Charge Jeffrey A Gearhart, under section 235(b)(1) of The ACT. See Exhibit F (Determination Of Inadmissibility). Petitioner was again ordered removed on April 4th 2025, but was granted "withholding of removal" to Egypt. Petitioner is currently detained at Caroline Immigration Detention Facility in Bowling Green, VA. Petitioner has been continuously detained by ICE for a period of over 13 months.

7. Respondent Pamela J. Bondi is the Attorney General of the United States and is responsible for the administration of Department of Justice and the implementation and enforcement of the Immigration & Naturalization Act (INA). As such, Ms. Pamela J. Bondi has ultimate custodial authority over Petitioner.

8.  Respondent Kristi Noem is the Secretary of the Department of Homeland Security. She is responsible for the administration of ICE and the implementation and enforcement of INA. As such Ms. Kristi Noem is the legal custodian of Petitioner.

9.  Respondent Todd Lyons is the ICE Field Office Director of the Washington Field Office of ICE and in Petitioner's immediate custodian.

10. Respondent Superintendent of Caroline Immigration Detention Facility, where Petitioner is currently detained under authority of ICE, alternatively may be considered to be Petitioner's immediate custodian.

## STATEMENT OF THE FACTS

11. Petitioner, Mahmoud Mansour Ahmad Elgendy, was born in Banha Egypt, on September 4th 2004, and is 21 years old, but holds Egyptian citizenship. He is the son of Mansour Elgendy and Rabha Mohamed Farrag, native of Egypt, and his siblings are Ahmed Mansour Angendy, Zainab Mansour Elgendy, and Mohamed and Moustafa Elgendy all from Banha Egypt. Prior to moving to the United States, he lived in Banha with his parents, along with his siblings. He attended El Shokr Institute for Boys in Primary and Preparatory school, then pursued to attend Maahad Kafr Shoker Elazharia High School. He also attended He also attended Faculty of Sharia Law University studying Law. He has no work experience there, as he was being financially supported by his parents while pursuing his degree from September 2021 through June 2024 before embarking on a journey to United States seeking asylum. From young age he suffered constantly marginalization, abuse, harassment and persecution due to his sexual orientation from his family, friends at school, and society as a whole. When he was a child he suffered severe burns due to his family's negligence and carelessness. They constantly asked him "When will you die?", because he was being assisted by his family to do everything even including dressing him. In their eyes, he became even more despised

and mistreated. He consulted with many doctors, seeking treatment for his burns and they were afraid, but finally in 2021 he underwent surgery, but turned out unsuccessful. During that time I was in University and the bullying, persecution and harassment got worse. He was never accepted by society or his community. It was during this time that he embraced his sexuality as a whole when he met a fellow student at the University, and after spending time together studying, he eventually developed a romantic relationship defying all possible consequences. In Egypt, Petitioner's identity and sexual orientation is considered a crime under Islamic and Sharia law, often bringing swift punishments, incarceration, and even executions on some occasions. This is also a great cause to bring family and community shame and dishonor. "LGBTQ" people in Egypt have no rights or protection, and general public, authorities, and my family and friends often turned a blind eye to these abuses. Therefore, after my relationship became known to the brother of my partner who is a high ranking Egyptian Government Official, and after being attacked and threatened to be further deteriorated and be killed, I went into hiding begging my older brother Ahmed to help me escape since the remainder of my family had learned of the incident and was actively pursuing me to punish me and delivered me into the hands of Egyptian Police. For these reasons, Petitioner endured a long journey while traveling to the United States because his life, well-being and safety was at stake in Egypt. If he was to return to Egypt He risks arrest, torture or worse. He traveled through Mauritania, Senegal, Morocco, Spain, El Salvador, Nicaragua, Honduras, Guatemala, and Mexico before arriving at the border. Here in the United States, Petitioner have family friends such as, Mohamed Abdel Moeez and his spouse Asmaa Soliman from Jersey City NJ, who are U.S. citizens willing to take him in and be his sponsor. See Exhibit A (Letter from Sponsor with attachments).

12.     On September 16th 2024, ICE took him into custody for first time. He has now been granted "withholding of removal", and is now respectfully seeking his release from indefinite detention to continue his treatment. See Exhibit I (Copy Of Burned Injuries from Egypt).

13. On September 16th 2024, ICE charged Mr. Elgendy with being inadmissible pursuant section 235 (b) (1) of the ACT. He was ordered deported in that; (1) he is not a citizen or national of the United States; (2) he is a national and citizen of Egypt; (3) he is an immigrant not in possession of a valid unexpired visa, reentry permit, border crossing card, or other valid entry document required by Immigration Nationality Act; and (4) he illegally entered the United States on or about September 16th 2024 near San Ysidro, California and were not inspected by an Immigration Officer. On April 4th 2025, Immigration Judge Jason Braun ("IJ") ordered him removed to Egypt, but granted him "withholding of removal" under INA § 241 (b)(3). Petitioner waived his right to appeal from the order of deportation, and the government didn't reserve their right to appeal either, thereby making it final on the same date. See Exhibit B (Copy of "IJ" Deportation Order).

14. On September 16th 2024, ICE took Petitioner into custody to await his deportation. Since that time, Petitioner has been continuously detained by ICE for over 13 months.

15. Petitioner's custody status was first reviewed on June 30th 2025, "90-day custody review". On that same date Petitioner was served with a written decision ordering his continued detention. See Exhibit C (Copy of 90-Day Review Letter) finding Petitioner a risk of flight.

16. On or about, six months after Petitioner's removal order became final, ICE conducted another review, "180-day custody review". In a letter dated October 8th 2025, ICE informed Petitioner that Petitioner would not be released, because Petitioner's deportation was "reasonably foreseeable." See Exhibit D (Copy of 180-Day Review Decision). ICE did not specify how many individuals from Egypt it had, in fact, repatriated, indicate whether it had contacted the government of "third country or countries" with respect to Petitioner's case. See Exhibit E (Letter from Attorney at Indus Pacific Law Office). (In fact, ICE has now been in possession of Petitioner's Egyptian issued passport since he was taken into custody. Indeed, it did not mention whether it had

contacted any other government to initiate Petitioner's deportation and gave no information concerning the existence or status of efforts to deport Petitioner, prior or after the "180-day removal period" or how long this process might take-weeks, months, longer?

17. Since my last review date of October 8th 2025, ICE has not notified Petitioner of any progress in Petitioner's repatriation.

18. To Petitioner's Knowledge, no other government has issued travel documents for him. Indeed, neither ICE nor any other government have provided any indication that would accept Petitioner in the "reasonably foreseeable" future. I have good reason to believe that my deportation is highly unlikely in the near future because I am "Stateless" and no other country recognize me as their citizen. In addition to this, I hold no "Residency Permit" anywhere, and my removal to Egypt has been judicially withheld to my country of citizenship. Historically, ICE has managed to deport a small percentage of Egyptian citizens, according to ICE.GOV/STATISTICS who have been granted withholding of removal.

19. Petitioner has cooperated fully with all efforts by ICE to remove Petitioner from the United States. I have not obstructed any custody review, I willingly gave the CBP/DHS agents my passport, and also spoke with my deportation officer on several occasions about my willingness to submit to photographs, fingerprints, in order to get any other country travel documents. In addition to this, I reiterated to my deportation officer that I have a "reasonable fear" to be deported to countries which have good diplomatic relations with my native country because they will likely repatriate me toEgypt, putting my life in great danger, risking imprisonment or even worse. At this time there is no Government representation that my deportation is current under review by any country, or foreign government and no date or time of removal.

**LEGAL FRAMEWORK FOR RELIEF SOUGHT**

20.     In Zadvydas v. Davis, 533 U.S. 678 (2001), the U.S. Supreme Court held that 8 U.S.C. §1231 (a) (6), when "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689. A "habeas court must [first] ask whether the detention in question exceeds a period to secure removal." Id. at 699. If the individual's removal "is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by the statute." Id. at 699-700.

21.     In determining the length of a reasonable removal period, the Court adopted "presumptively reasonable period of detention" of six months. Id. at 701. After six months, the government bears the burden of disproving an alien's good reason to believe that there is no significant likelihood of removal in the foreseeable future." See Zhou v. Farquharson, 2001 U.S. Dist. LEXIS 18239, *2-*3 (D. Mass. Oct. 19, 2001) (quoting and summarizing Zadvydas). Moreover, "for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as 'reasonably foreseeable future' conversely would have to shrink." Zadvydas, 533 U.S. at 701. ICE's administrative regulations also recognize that the HQPDU has a six-month period for determining whether there is a significant likelihood of an alien's removal in the reasonably foreseeable future. See 8 C.F.R. §241.4 (k) (2) (ii).

22.     Evidence showing successful repatriation of other persons to the country at issue is not sufficient to meet the government's burden to establish that an alien petitioner will be deported in the reasonably foreseeable future. See Thompson v. INS, 2002 U.S. Dist. LEXIS 23936 (E. D. La. September 16, 2002) (government failed to show that alien's deportation to Guyana was reasonably foreseeable where the government offered historical statistics of repatriation to Guyana, but failed to show any response from Guyana on the application for travel documents that INS and the

petitioner had requested). Rather for the government to meet its burden of showing that an alien's repatriation is reasonably foreseeable, it must provide some meaningful evidence particular to the individual's particular case.

23. An alien who has been detained beyond the presumptive six months should be released where the government is unable to present document confirmation that the foreign government at issue will agree to accept the particular individual in question. See Agbada v. John Ashcroft, 2002 U.S. Dist. LEXIS 15797 (D. Mass. August 22, 2002) (court "will likely grant" habeas petition after fourteen months if ICE is "unable to present document confirmation that the Nigerian government has agreed to [petitioner's] repatriation"); Zhou, 2001 U.S. Dist. Lexis 19050 at *7 (W.D Wash. February 28, 2002) (government's failure to offer specific information regarding how or when it expected to obtain the necessary documentation or cooperation from the foreign government indicated that there was no significant likelihood of petitioner's removal in the reasonably foreseeable future).

## CLAIMS FOR RELIEF
## COUNT ONE
## STATUTORY VIOLATION

24. Petitioner re-alleges and incorporates by reference paragraphs 1 through 23 above.

25. Petitioner's continued detention by respondents is unlawful and contravenes 8 U.S.C. § 1231(a) (6) as interpreted by the U.S. Supreme Court in Zadvydas. The six-month presumptively reasonable period for continued removal efforts has expired. Petitioner still has not been removed, and for the reasons above in paragraphs 1 to 20, Petitioner's removal toEgypt is not reasonably foreseeable. The Supreme court held in Zadvydas and Martinez that ICE's continued detention of

someone after six months where deportation is not reasonably foreseeable is unreasonably and in violation of 8 U.S.C. § 1231 (a). 533 U.S. at 701.

## COUNT TWO

## SUBSTANTIVE DUE PROCESS VIOLATION

26. Petitioner re-alleges and incorporates by reference paragraphs 1 through 25 above.

27. Petitioner's continued detention violates Petitioner's right to substantive due process through a deprivation of the core liberty interest in freedom from bodily restraint. See e.g., Tam V.INS, 14 F. Supp. 2d 1184 (E. D. Cal 1998) (aliens retain substantive due process).

28. The Due Process Clause of the Fifth Amendment requires that the deprivation of Petitioner's liberty be narrowly tailored to serve a compelling government's interest. While Respondents would have an interest in detaining Petitioner in order to effectuate removal, that interest does not justify the indefinite detention of Petitioner, who is not significantly likely to be removed in the reasonably foreseeable future. The U.S. Supreme Court in Zadvydas thus interpreted 8 U.S.C. § 1231 (a) to allow continued detention only for a period reasonably necessary to secure alien's removal, because any other reading would go beyond the government's articulated interest - to effect the alien's removal. See Kay v. Reno, 94 F. Supp.2d 546, 551 (M.D. Pa. 2000) (granting writ of habeas corpus, because petitioner's substantive due process rights were violated, and noting that "if deportation can never occur, the government's primary legitimate purpose in detention-executing removal – is nonsensical.")

## COUNT THREE

## PROCEDURAL DUE PROCESS VIOLATION

29. Petitioner's re-alleges and incorporates by reference paragraphs 1 through 28 above.

30. Under Due Process Clause of the Fifth Amendment, an alien is entitled to a timely and meaningful opportunity to demonstrate that she/he should not be detained. Petitioner in this case has been denied that opportunity. ICE does not make decisions concerning alien's custody status in a neutral and impartial manner. The failure of Respondents to provide a neutral decision-maker to review the continued custody the Petitioner violates Petitioner's right to procedural due process. Further, Respondents have failed to acknowledge or act upon the Petitioner's administrative request for release in a timely manner. There is no administrative mechanism in place for Petitioner to demand a decision, ensure that a decision will ever be made, or appeal custody decision that violates Zadvydas.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this court grant the following relief;

1) Assume jurisdiction over this matter;

2) Grant Petitioner a writ of habeas corpus directing the Respondents to immediate release Petitioner from custody, under reasonably conditions of supervision;

3) Order Respondents to refrain from transferring the Petitioner out of jurisdiction of the ICE Washington Field Office Director during the pendency of these proceedings and while the Petitioner remains in Respondent's custody; and

4) Award Petitioner attorney's fees and costs under Equal Access to Justice Act ("EAJA"), as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and on any other basis justified under law; and

...

5) Grant any other and further relief that this Court deems just and proper.

I affirm, under penalty of perjury, that the foregoing is true and correct. Respectfully submitted this 30 of October, 2025.

Respectfully Submitted,

Petitioner Mahmoud Elgendy, *Pro se*

*[signature]*

Caroline Detention Facility
11093 S W Lewis Mem. Dr.
P O. Box 1460, Bowling Green, VA 22427

## Certificate of Service

I, Mahmoud Elgendy, certify that a true copy of the above document (Petition for a Writ of Habeas Corpus) together with attached documents, was served on October 24th 2025, upon the following;

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

701 East Broad Street, suite 3000

Richmond, VA 23219-3528

By placing a copy of the above in the mail system at the facility where I am detained;

JOSEPH SIMON, ICE FIELD OFFICE DIRECTOR

WASHINGTON FIELD OFFICE

C/O DHS OFFICE OF THE GENERAL COUNSEL

2707 Martin Luther King Jr. Ave S E,

Washington, 20528-0485

ERIK S. SIEBERT, U.S. ATTORNEY

C/O CIVIL PROCESS CLERK

EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION

2100 Jamieson Avenue

Alexandria, VA 22314

*[signature]*

Mahmoud Elgendy, *Pro Se*

A# 249-393-254

Caroline Detention Facility

11090 S. W. Lewis Memorial Drive

Bowling Green, VA, 22427